WACO EXPORT COMPANY, INC. y BOSTON OLD COLONY INS. Co., demandantes y recurridas, *v.* EXPRESO METEORO, INC., demandada y recurrente.

*Número:* R-78-190 *Resuelto:* 22 de enero de 1979

*Jorge J. De La Torre,* abogado de la recurrente; *Jiménez & Fusté* y *Paul E. Calvesbert Borgos,* abogados de las recurridas.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Waco Export Co., Inc. contrató(¹) con Expreso Meteoro, Inc.—porteador público dedicado al transporte de mercancía por vía terrestre—que levantara del muelle y entregara a varios consignatarios en la Isla un cargamento de noventa y dos (92) cartones de juguetes. El viernes 27 de julio de 1973,

---

(¹) El acuerdo era uno mercantil a la luz del Art. 267 del Código de Comercio:

"El contrato de transporte por vías terrestres o fluviales de todo género, se reputará mercantil:

"(1) Cuando tenga por objeto mercaderías o cualesquiera efectos del comercio.

"(2) Cuando, siendo cualquiera su objeto, sea comerciante el porteador o se dedique habitualmente a verificar transportes para el público." (10 L.P.R.A. sec. 1771.)

Este acuerdo no fue reducido a escrito en "carta de porte", que es el documento representativo del título legal sobre contrato de transporte terrestre. (10 L.P.R.A. sec. 1772.) Ninguna de las partes impugnó la existencia y obligatoriedad del acuerdo verbal de utilización de personal y equipo de la demandada para el transporte de la mercancía. Véanse los Arts. 271 y 82 del Código de Comercio (10 L.P.R.A. secs. 1775 y 1302). En el caso de autos el documento que evidencia el transporte terrestre efectuado es un "Cart Check" Núm. A-2105 que constituye un recibo que firmó el empleado de Expreso Meteoro al recibir la mercancía en el muelle.

un empleado de Meteoro recogió la mercancía en uno de sus camiones, pero por ser dicho viernes medio día laborable, y no trabajarse el sábado y el domingo, lo trasladó a los terrenos del local de Meteoro para realizar la entrega el lunes en que se reanudarían las labores. Ese lunes se percataron del hurto del camión que contenía el cargamento de juguetes y de inmediato lo comunicaron a la policía. El local de Meteoro carecía de vigilancia, alarmas o portones que lo protegiesen. Contrario a otras ocasiones en que la carga que no podía ser entregada era guardada en un almacén que hay en el local, no se tomó providencia de seguridad alguna.

Por estos hechos Waco demandó a Meteoro reclamando el valor de la mercancía ascendente a $5,379.65, imputándole negligencia. Mediante enmienda compareció como demandante la Boston Old Colony Insurance Co., aseguradora de aquélla, subrogándose en sus derechos al satisfacerle tal importe. Meteoro contestó negando que la mercancía hubiese sido hurtada de su local y como defensas afirmativas alegó que no existía contrato de carga entre las partes y solo uno de uso de equipo y personal, y que la demandante había convenido asumir el riesgo del transporte por tener amplias pólizas de seguro. Oportunamente se dictó sentencia declarando con lugar la demanda. El foro de instancia estimó que la demandada Meteoro no había ejercido el debido cuidado y diligencia para evitar la pérdida de la mercancía; y que el cargador, al contratar el transporte, no había aceptado los riesgos a que pudiera estar sujeta la misma por la negligencia del porteador. Citó con aprobación *Vidal & Cía., S. en C.* v. *Am. R.R. Co.*, 28 D.P.R. 204, 215 (1920), al efecto de que cuando en una carta de expedición se expone que la remisión de la mercancía se hará a "riesgo del dueño", con el propósito de reducir el costo de las tarifas, ello se refiere en cuanto a pérdidas o averías, pero exceptuando cuando éstas ocurran por negligencia de la compañía.

■ A solicitud de Meteoro, acordamos revisar. Su contención principal es que no es de aplicación lo resuelto en *Vidal*, supra, ya que aunque es un porteador público, actuó en el caso de autos como porteador por contrato según lo define la Ley Núm. 109 de 28 de junio de 1962 denominada Ley de Servicio Público de Puerto Rico, según enmendada (27 L.P.R.A. sec. 1002(m)). Esta tesis, aunque no la elabora satisfactoriamente, supone que un porteador por contrato puede pactar para exonerarse de toda responsabilidad que pudiera tener como transportador terrestre bajo las disposiciones del Código de Comercio de Puerto Rico. (Véase, 10 L.P.R.A. secs. 1771 a 1801.)

■ No tiene razón. Se trata de un contrato mercantil de transporte terrestre, [2] independientemente de que haya sido pactado por Meteoro en su carácter de porteador público o privado por contrato de acuerdo a las definiciones contenidas en la Ley de Servicio Público. Son de aplicación los preceptos del Código de Comercio respecto a la pérdida de mercadería en la transportación terrestre[3] y lo resuelto en *Vidal*, supra,

---

[2] Para comentarios sobre este contrato mercantil véanse: Langle Rubio, *Manual de Derecho Mercantil Español*, Tomo III, págs. 467-491 (1959); González de Echávarri, *Comentarios al Código de Comercio y Jurisprudencia Española*, 3ra. ed., Tomo III, págs. 468-528 (1945); Gay de Montellá, *Código de Comercio Español Comentado*, 2da. ed., Tomo III, Vol. I, págs. 260-271 (1948); Uría, *Derecho Mercantil*, 10ma. ed., págs. 514-527 (1975); Sánchez Calero, *Instituciones de Derecho Mercantil*, 5ta. ed., págs. 434-442 (1976); Garrigues, *Curso de Derecho Mercantil*, 6ta. ed., Tomo II, págs. 197-229 (1974).

[3] En parte dispone tal estatuto en la referida materia:

"Las mercaderías se transportarán a riesgo y ventura del cargador, si expresamente no se hubiere convenido lo contrario.

"En su consecuencia, serán de cuenta y riesgo del cargador todos los daños y menoscabos que experimenten los géneros durante el transporte, por caso fortuito, fuerza mayor o naturaleza y vicio propio de las cosas.

"La prueba de estos accidentes incumbe al porteador. [10 L.P.R.A. sec. 1783].

"El porteador, sin embargo, será responsable de las pérdidas y averías que procedan de las causas expresadas en la sección anterior, si se probare en su contra que ocurrieron *por su negligencia o por haber dejado de tomar*

reafirmado en *Morales Mejías* v. *Met. Pack. & Ware. Co.*, 86 D.P.R. 3 (1962). Desde antaño se formuló la regla de responsabilidad absoluta de los porteadores hasta el punto de decirse en ocasiones que el porteador era un asegurador de los bienes que se le confiaban. Nuestro Código de Comercio, de entronque civilista, recoge en parte ese sentir y expone la siguiente norma condensada en *Morales Mejías*, supra:

". . . el remitente o cargador sólo asume el riesgo cuando se trata de caso fortuito, fuerza mayor o naturaleza y vicio propio de las cosas, *y aún en estos casos el porteador será responsable si la pérdida o avería ocurrió por haber dejado éste de tomar las precauciones que adoptaría una persona diligente o debido a otra forma de negligencia de su parte.* 10 L.P.R.A. sec. 1784. Además, cuando se trata de caso fortuito, fuerza mayor o naturaleza y vicio de las cosas, es al porteador y no al cargador a quien incumbe la prueba en esos casos." (10 L.P.R.A. sec. 1783.) Págs. 8–9. (Énfasis nuestro.)

■ En el caso de autos ocurrió una pérdida total de los objetos porteados, al ser hurtados del camión de la demandada Meteoro donde los mantuvo sin protección alguna desde que los recogió en el muelle. No podemos considerar como fuerza

---

*las precauciones que el uso tiene adoptadas entre personas diligentes,* a no ser que el cargador hubiese cometido engaño en la carta de porte, suponiéndolas de género o calidad diferentes de los que realmente tuvieren.

"Si a pesar de las precauciones a que se refiere esta sección, los efectos transportados corrieran riesgo de perderse, por su naturaleza o por accidente inevitable, sin que hubiese tiempo para que sus dueños dispusieran de ellos, el porteador podrá proceder a su venta, poniéndolos con este objeto a disposición de la autoridad judicial o de los funcionarios que determinen disposiciones especiales. [10 L.P.R.A. sec. 1784, énfasis nuestro.]

"Fuera de los casos prescritos en el párrafo segundo de la sec. 1783 de este título, *el porteador estará obligado a entregar los efectos cargados en el mismo estado en que, según la carta de porte, se hallaban al tiempo de recibirlos, sin detrimento ni menoscabo alguno, y no haciéndolo, a pagar el valor que tuvieren los no entregados, en el punto donde debieran serlo y en la época en que correspondía hacer su entrega.*

"Si ésta fuere de una parte de los efectos transportados, el consignatario podrá rehusar el hacerse cargo de éstos, cuando justifique que no puede utilizarlos con independencia de los otros." (10 L.P.R.A. sec. 1785.) (Énfasis nuestro.)

mayor el hurto aquí ocurrido, pues según lo estimó probado el tribunal de instancia, no se tomaron ni las más mínimas precauciones para evitar tal pérdida.

 Finalmente, aun aceptando la alegación de Meteoro en el sentido de que Waco *pactó asumir el riesgo total de la transportación*, tampoco quedaría exenta de responsabilidad por su negligencia, ya que tal *pacto de liberación absoluta* contravendría el orden público y el Código de Comercio. Langle Rubio, al comentar cláusulas de exoneración en contratos de transporte terrestre expone:

". . . En los transportes, es frecuente que aparezca un pacto por virtud del cual el porteador no será responsable de los eventuales daños que sufran las cosas, ni estarán, por tanto, obligados a indemnizar. ¿Qué significado y valor puede tener esto?

Los riesgos de todo transporte de mercancías recaen, por ministerio de ley, sobre el expedidor (salvo pacto expreso, art. 361). Luego el transportista se encuentra ya a cubierto de la fuerza mayor, del caso fortuito y del vicio propio de aquéllas. Con que el contrato guarde silencio sobre ello, es bastante. ¿Qué se pretende, entonces? En realidad, una exención de responsabilidad, tanto por los daños que se produzcan a causa del riesgo ordinario y normalmente anejo a toda explotación, o que sean previsibles y evitables, como incluso por los que se deriven de dolo, culpa o negligencia. Además, poner obstáculos al deje de cuenta. Y nada de esto es admisible, jurídicamente. Algunas leyes extranjeras lo han prohibido explícitamente (ej. en Francia, la ley Rabier de 17 de marzo 1905, sobre transporte terrestre).

Puede reconocerse en términos generales la validez de las convenciones de exoneración, ya que existe la libertad de pactos y ya que las limitaciones de responsabilidad en las actividades comerciales son doctrina corriente. Mas con un tope: con la excepción, sobre todo, de los casos en que el daño sea imputable de algún modo al porteador. Jurídicamente, no es dado reconocerles alcance absoluto. Tampoco puede olvidarse que las empresas poderosas o con monopolio las imponen a sus clientes . . . aunque después las invocan como aceptadas con plena libertad por ellos. Si en ocasiones no representan una clara imposición, al menos suelen deslizar hábilmente esas cláusulas en el texto impreso de la carta, sin que aquéllos se den cuenta siquiera de que existen.

Asegurada así la irresponsabilidad de los porteadores, éstos no se cuidan de evitar negligencias dañosas, a pesar de que la ley les obliga a 'tomar las precauciones que el uso tiene adoptadas entre personas diligentes' (art. 362); efecto práctico nocivo, que reviste un interés social indudable. Todos hemos contemplado, a veces, la manera desconsiderada de tratar las mercancías en su carga, colocación o descarga, aun llevando rótulo de 'frágil'. Y la empresa tiene que responder de sus empleados u obreros.

*La ley debe salir al paso de toda coacción o conducta mal intencionada o culposa y de efectos perjudiciales, sentando normas que, como un mínimum de justicia, sean inderogables. Esto es lo que, a nuestro juicio, persiguen las disposiciones del Co. sobre el transporte, aunque no contengan una disposición expresa sobre la nulidad de ciertas cláusulas. Rectamente interpretadas, no cabe cohonestar esa práctica, tan extendida y cómoda, de las cláusulas de irresponsabilidad para supuestos de responsabilidad legal.*

Pensamos que, conforme a nuestro Dro. positivo, en el transporte terrestre ordinario (único de que tratamos ahora) los pactos excluyentes de responsabilidad del porteador por averías que deben ir a su cargo, carecen de validez; porque se oponen a la ley, cuyos preceptos adoptan forma imperativa (arts. 362 a 368 y 377). Lo corrobora la doctrina general del Cc. (arts. 1.102 y 1.255). En este sentido se pronunciaban Alvarez del Manzano, Bonilla y Miñana. Cita Garrigues la opinión de Asquini (coincidente con la de dichos autores nacionales) y entiende que 'en Dro. español, la nulidad de tales cláusulas parece imponerse en términos generales por analogía de lo dispuesto para el transporte marítimo en el artículo 620' (que el capitán del buque será responsable 'siempre, sin que valga pacto en contrario' de los daños 'que se ocasionen por sus propias faltas')." *Op. cit.*, págs. 487–489 (Énfasis nuestro.)

En adición y al mismo efecto: Garrigues, *Op. cit.*, págs. 227–228; Sánchez Gamborino, *Modificación Convencional de la Responsabilidad del Porteador en el Contrato de Transporte Terrestre*, Rev. Gen. Legis. y Juris., Vol. 189, págs. 707, 709 (1951).

En resumen, en circunstancias como las de autos, son nulas e ineficaces las cláusulas de absoluto relevo de respon-

sabilidad por negligencia, por contravenir las mismas el interés público plasmado en el Código de Comercio.(4) *Expreso Meteoro, Inc. responde por su negligencia. Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Martín concurre en el resultado por entender que el porteador responde por las pérdidas ocurridas por su negligencia conforme lo dispone el Art. 280 del Código de Comercio de Puerto Rico.

---

(4) Estando adecuadamente regulada la cuestión en nuestro derecho positivo estimamos innecesario adentrarnos a las soluciones y enfoques de otras jurisdicciones ajenas a nuestra tradición civilista.