Enrique Morales Mejías, demandante y recurrente, *v.* Metropolitan Packing & Warehousing Company, demandada y recurrida.

Número: 178    Resuelto: 7 de septiembre de 1962

4

*Luis A. Catoni Antonetti,* abogado del recurrente; *Carlos Carrera Benítez,* abogado de la recurrida.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Rigau.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El demandante le entregó a la firma demandada varios muebles y enseres del hogar para que se los transportara mediante paga de Puerto Rico a Nueva York. La demandada se dedica a prestar esa clase de servicios. Mientras la demandada tenía dichos muebles almacenados en Puerto Rico los mismos fueron destruídos por un incendio. A pesar de las investigaciones practicadas no se pudo descubrir el origen del fuego pero se supo que el mismo comenzó en la parte trasera del almacén, donde estaban los materiales de empaque tales como papel picado, serrín de madera, cajas de cartón y papel encerado.

El demandante radicó demanda en daños por $3,000.00 y el tribunal de instancia la declaró sin lugar basándose en que el peso de probar la imputación de negligencia recae "siempre" sobre la parte demandante y que ésta no la probó. Por su parte el demandante sostiene que erró el tribunal ya que el peso de la prueba varía de lugar en casos de esta naturaleza y recae sobre el porteador. ▮

Tiene razón el recurrente. El error señalado se cometió. Aunque la regla general es al efecto de que la negligencia no se presume y quien la imputa debe probarla, esta regla tiene varias excepciones y una de ellas es la que este caso plantea, o sea, cuando se trata de porteadores públicos. Dicha excepción, que es la regla aplicable a los porteadores públicos, puede resumirse diciendo que éstos responden de las pérdidas y averías de las cosas que reciben, a no ser que prueben que la pérdida o la avería ha provenido de caso

.fortuito o de fuerza mayor. Esta regla es universal; está consagrada en el derecho civil, en nuestro derecho positivo, en el derecho común anglosajón, en la legislación del Congreso de los Estados Unidos y en la Ley Uniforme de Conocimientos de Embarque, como veremos en el curso de esta opinión. Al decir derecho civil nos referimos a los ordenamientos jurídicos de ascendencia romana, europeos y sudamericanos, generalmente codificados.

La regla aludida no es nueva. Como desde tiempos remotos el hombre encontró necesario confiarle a otros sus productos y artículos para ser transportados a distintos lugares, también fue necesario desde entonces elaborar preceptos sobre los derechos, deberes y responsabilidades de los depositarios (bailees) y de los porteadores públicos. Así, por ejemplo, en el derecho romano encontramos disposiciones sobre el particular en el *Digesto de Justiniano*, (año 553) Libro IV, Título 9, sección 1:

"Si los marineros, venteros y mesoneros no restituyesen lo de cualquiera que hubieren recibido para que esté a salvo, daré acción contra ellos.

"Muy grande es la utilidad de este Edicto, porque las más de las veces es necesario fiarse de ellos y encomendar cosas a su custodia. Y nadie juzgue que es gravoso lo establecido contra ellos; porque está en el arbitrio de los mismos el no recibir a nadie; y si esto no se hubiese establecido, se daría pie para que se concertasen con los ladrones contra aquellos a quienes reciben, como quiera que ni aun ahora ciertamente se abstengan de semejantes fraudes."[1]

Una disposición al efecto aparece también en la *Instituta de Justiniano*, Libro IV, Título 5, sec. 3.[2] ■

---

[1] Para los textos latino y español véase *Cuerpo del Derecho Civil Romano* publicado por García del Corral, Barcelona, 1889, Tomo I, p. 409. Para el texto inglés véase *Epitome of Roman Law* traducido y publicado por Sherman, N. Y., 1937, sec. 425, p. 217.

[2] García del Corral, obra citada, Tomo I, p. 135.

En el derecho común los antecedentes conocidos son más recientes.[3]  Unos autores lo sitúan en el siglo 16[4] y otros en el siglo 17.[5]  De todos modos en 1703 en *Coggs* v. *Bernard*[6] Lord Holt discute y formula claramente la regla de la responsabilidad absoluta de los porteadores, excepción hecha de casos de fuerza mayor (*Act of God*) y de guerra (*the King's enemies*).  La regla quedó definitivamente establecida en el derecho inglés en *Forward* v. *Pittard*,[7] caso en que Lord Mansfield sostuvo la responsabilidad del porteador (por artículos destruídos por un fuego como en el caso de autos) independientemente de la culpa o ausencia de ella de parte del porteador.  En su opinión utilizó el ilustre juez la frase clave que se ha seguido citando en derecho anglosajón hasta nuestros días: el porteador es un asegurador de los bienes que se le han confiado.[8]  Para ejemplos de expresiones judiciales recientes de ese concepto, puede verse *Armour Research Foundation* v. *Chicago, Rock Island and Pacific Railroad Co.*, 297 F.2d 176, 178 (1961) y *U. S.* v. *Mississippi Valley Barge Line Co.*, 285 F.2d 381, 388 (1960).

Sería innecesariamente prolijo reseñar la evolución de la regla que aquí discutimos desde los antecedentes mencionados hasta hoy.  Veamos el derecho vigente.

El Código Civil al tratar del arrendamiento de obras y servicios, y específicamente del "Transporte por agua y tierra de personas y cosas" dispone que "responden . . . los conductores de las pérdidas y averías de las cosas que reciben, a no ser que prueben que la pérdida o la avería ha

---

[3] Es natural.  Cuando la historia inglesa comienza ya el derecho romano, durante el transcurso de los mil años anteriores, había hecho enormes aportaciones al derecho universal.—Plucknett, *A Concise History of the Common Law*, 4ta. ed., Londres, 1948, p. 3.

[4] Holmes, *The Common Law*, ed. de 1946, Boston, p. 181.

[5] Sherman, *Roman Law in the Modern World*, 3ra. ed., N.Y., 1937, Vol. II, p. 386; *Plucknett*, obra citada, p. 453.

[6] 2 Lord Raymond's Rep. 909, 918; 92 Eng. Rep. 107, 112 (1703).

[7] I Term.  Rep. 27, 33; 99 Eng. Rep. 953, 956 (1785).

[8] "A carrier is in the nature of an insurer."

provenido de caso fortuito o de fuerza mayor," y nos remite a lo que sobre el particular establece el Código de Comercio. Arts. 1493 y 1494, 31 L.P.R.A. secs. 4141 y 4152.

Al preceptuar sobre los riesgos de la transportación el Código de Comercio establece lo siguiente en su Art. 279, 10 L.P.R.A. sec. 1783, equivalente al 361 español:

"Las mercaderías se transportarán a riesgo y ventura del cargador, si expresamente no se hubiere convenido lo contrario.

"En su consecuencia, serán de cuenta y riesgo del cargador todos los daños y menoscabos que experimenten los géneros durante el transporte, por caso fortuito, fuerza mayor o naturaleza y vicio propio de las cosas.

"La prueba de estos accidentes incumbe al porteador."

E inmediatamente en el artículo siguiente:

"El porteador, sin embargo, será responsable de las pérdidas y averías que procedan de las causas expresadas en la sección anterior, si se probare en su contra que ocurrieron por su negligencia o por haber dejado de tomar las precauciones que el uso tiene adoptadas entre personas diligentes, a no ser que el cargador hubiese cometido engaño en la carta de porte, suponiéndolas de género o calidad diferentes de los que realmente tuvieren." . . . 10 L.P.R.A. 1784.

Y en el que le sigue:

"Fuera de los casos prescritos en el párrafo segundo de la sec. 1783 de este título [caso fortuito, fuera mayor o vicio propio de las cosas] el porteador estará obligado a entregar los efectos cargados en el mismo estado en que, según la carta de porte, se hallaban al tiempo de recibirlos, sin detrimento ni menoscabo alguno, y no haciéndolo, a pagar el valor que tuvieren los no entregados, en el punto donde debieran serlo y en la época en que correspondía hacer su entrega." 10 L.P.R.A. 1785.

Como hemos visto, el remitente o cargador sólo asume el riesgo cuando se trata de caso fortuito, fuerza mayor o naturaleza y vicio propio de las cosas, y aún en estos casos el porteador será responsable si la pérdida o avería ocurrió por haber dejado éste de tomar las precauciones que adop-

taría una persona diligente o debido a otra forma de negligencia de su parte. 10 L.P.R.A. sec. 1784. Además, cuando se trata de caso fortuito, fuerza mayor o naturaleza y vicio de las cosas, es al porteador, y no al cargador, a quien incumbe la prueba en esos casos. 10 L.P.R.A. sec. 1783. ■

Como dijimos en *Vidal* v. *American Railroad Co.*, 28 D.P.R. 204, 209 (1920):

"Examinados estos preceptos se ve que aunque parecen sentar la regla de que el cargador asume los riesgos de sus mercaderías, salvo pacto en contrario, sin embargo lo que hacen es declarar la regla contraria o sea que el porteador responde de las pérdidas o menoscabos de las mercancías que se le entreguen para transportar a menos que pruebe que la destrucción o menoscabo de ellas se debe a caso fortuito, fuerza mayor o naturaleza y vicio propio de las cosas, no obstante lo cual todavía será responsable si el cargador prueba que tales hechos ocurrieron por negligencia del porteador o por haber dejado de tomar las precauciones que el uso tiene adoptadas entre personas diligentes. De acuerdo, pues, con ellos, basta haber hecho la entrega de mercancías para transporte para que el porteador esté obligado a indemnizar por su pérdida o menoscabo si no prueba que ocurrieron por algunas de las causas que la eximen de responsabilidad." ■

Y citando una sentencia del Tribunal Supremo de España, allí dijimos a la pág. 210:

"Aunque el incendio puede ser considerado como fortuito o fuerza mayor, sin embargo no todo incendio tiene ese carácter . . . por lo que el incendio ocurrido en mercancías entregadas a un porteador para su transporte y cuyas causas se desconocen no puede ser considerado como fuerza mayor o caso fortuito porque no puede determinarse si pudo ser precavido o resistido."

No creemos necesario extendernos más. Para una discusión y conclusiones acordes con lo que dejamos expresado puede verse, en sus comentarios a los artículos 361 y 362 del Código de Comercio español, equivalentes a los nuestros anteriormente citados, a Gay de Montellá, *Código de Comer-*

cio Español Comentado, 2da. ed., Barcelona, 1948, Tomo III, Vol. I, pp. 260–271, y a Langle Rubio, Manual de Derecho Mercantil Español, Barcelona, 1959, Tomo III, pp. 485–489.

En el derecho común la regla de la responsabilidad absoluta de los porteadores públicos también admite las excepciones, como en el derecho civil, de fuerza mayor y caso fortuito y las de la naturaleza o vicio propio de las cosas. También como en el derecho civil, el peso de la prueba recae sobre el porteador. Como se dijo en Secretary of Agriculture v. U. S., 350 U. S. 162; 100 L. ed. 173, 178, escolio 9 (1956):

"La sección 20(11) (49 U.S.C.) codificó la regla del derecho común que hace responsable al porteador de los daños que sufran los artículos transportados, sin que se establezca su negligencia, a menos que el porteador pruebe que los daños fueron causados por el cargador, por caso fortuito o fuerza mayor, por el enemigo, el gobierno o debido a la naturaleza o vicio propio de las cosas." (Citas omitidas.)

Para otros casos en donde se aplica la regla que aquí discutimos puede verse Armour Research Foundation v. Chicago, R. I. and P. R. R. Co. (1961), supra; Texas v. Empacadora, 342 S.W.2d 195, 199 (1961); U. S. v. Mississippi Valley Barge Line Co. (1960), supra; Panhandle & Santa Fe R. Co. v. Trautmann, 341 S.W.2d 504, 505 (1960); Cía. de Vapores Ins. Co., v. Missouri-Pacific R. Co., 133 F. Supp. 942, 948 (1955); Montgomery Ward v. Northern Pacific Terminal Co. of Oregon et al., 128 F. Supp. 475, 493–494, 505 (1953); Seaboard Air Line v. Chanin, 66 S.E.2d 113, 116 (1951); Adams Express Co. v. Croninger, 226 U. S. 491; 57 L. ed. 314, 319 (1912); y Galveston, H. & S. A. R. Co. v. Wallace, 223 U. S. 481, 56 L. ed. 516, 523 (1911). ▇

La jurisprudencia señala que la regla que impone el peso de la prueba sobre los porteadores, cuando éstos levantan las defensas permisibles (fuerza mayor, etc.) se debe a que es

el porteador el que tiene los bienes bajo su custodia, él es el que tiene el mejor acceso a la prueba y a veces el único que tiene dicho acceso, ya que el remitente se ha desprendido de los bienes y le es muy difícil y a veces imposible saber, y menos probar, lo que aconteció. Además de los casos citados, véase I Jones *On Evidence*, 5ta. ed., 1958, sec. 19, p. 39; McCormick *On Evidence*, 1954, sec. 309, p. 641; y las anotaciones en 53 A.L.R. 996 y 106 A.L.R. 1156. Para la regla adoptada por la Ley Uniforme de Conocimientos de Embarque véase 4 Uniform Laws Anno., Bills of Lading Act, sec. 11. ■

En cuanto a la legislación federal que ya hemos mencionado, 49 U.S.C.A. sec. 20(11), y que una de las partes nos cita, y la cual confirma la regla del derecho común sobre la responsabilidad de los porteadores, *Secretary of Agriculture* v. *U. S.*, supra, debemos decir que esa legislación federal no es aplicable a Puerto Rico en virtud de la sección 38 de la Ley de Relaciones Federales. Dicha sección 20(11) de 49 U.S.C.A. es parte de la Ley Sobre Comercio Interestatal (*Interstate Commerce Act*) y sobre el particular la Ley de Relaciones Federales dispone en la citada sección 38 que "No serán aplicables a Puerto Rico la Ley Sobre Comercio Interestatal y las varias enmiendas hechas o que se hagan a ella; ..." L.P.R.A., 1954, Tomo I, p. 175. ■

Nos argumenta una de las partes que el demandante recurrente varió su teoría en revisión porque en el tribunal de instancia sostuvo que el daño se debió a la negligencia de la demandada y ante nos levanta la teoría de que no viene obligado a probar la negligencia del porteador. Como dijimos en *Coll* v. *Picó*, 82 D.P.R. 27, 38 (1960), la cuestión "solo envuelve un punto de derecho cuya solución basta para que dictemos un fallo final. Por consiguiente no nos podríamos negar a considerarla y a resolverla sin faltar a nuestro deber esencial de impartir justicia y de hallar en cada litigio

la verdad. Nuestra jurisprudencia ha descartado el arcaísmo de que nunca puede variarse en apelación o en revisión la teoría del caso aducida ante el tribunal de instancia." Véase también *Serra* v. *Autoridad de Transporte*, 68 D.P.R. 626, 629 (1948) en donde expresamos que "este Tribunal hará todo lo que esté a su alcance para que los casos sean resueltos en sus méritos . . ."

Es cierto que en la Europa medieval se litigó a caballo y con lanza pero ya los tribunales no administran justicia como quien supervisa un deporte. (9)

*Se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 25 de mayo de 1959; se declarará con lugar la demanda, y habiendo el tribunal de instancia concluído en sus Determinaciones de Hecho que el demandante sufrió pérdidas a consecuencia del incendio, pero no habiendo dicho tribunal fijado la cuantía de dichas pérdidas, y no teniendo ante nosotros la transcripción de evidencia, se devolverá el caso al Tribunal Superior, Sala de San Juan, para que éste determine la cuantía de los daños sufridos por el demandante.*

---

(9) Para una descripción de esos "procedimientos" medievales el interesado puede ver Montesquieu, *El Espíritu de las Leyes*, Libro 28; y *Plucknett*, obra citada, p. 403. La Corona suministraba el equipo, los entrenadores, los armeros, y hasta hacía construir un templete para que los magistrados y otros dignatarios presenciasen el combate. Hay un caso inglés, raro por lo relativamente reciente, el de *Ashford* v. *Thornton*, del año 1818 reportado en I B. & Ald. 405; 106 Eng. Rep. 149 (K.B. 1818), en el cual se sostuvo el antiguo derecho invocado por el acusado de demostrar su inocencia mediante juicio por combate. Debido a que el acusador no aceptó el desafío el acusado fue puesto en libertad. Como consecuencia de este caso anacrónico el Parlamento se apresuró a abolir por ley ese procedimiento. 59 Geo. III, c. 46 (1819).