# 97 DTA 189

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE-AIBONITO**

**PANEL II**

CARLOS ROBERTO VELAZQUEZ
Demandante-Recurrido

v.

DR. JENARO SCARANO GARCIA
Demandado-Recurrente

Núm. KLCE-97-00775

San Juan, Puerto Rico, a 10 de septiembre de 1997

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano de Bonilla

López Vilanova, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

El 2 de septiembre de 1997, se refiere a este Panel el recurso de epígrafe presentado ante este

Tribunal el 7 de agosto de 1997.

Se recurre de una Resolución del Tribunal de Primera Instancia, Sala Superior de Ponce (Hon. Leida González Degró), que declaró sin lugar una Moción de Desestimación y/o Sentencia Sumaria presentada por los aquí peticionarios.

En dicha resolución el tribunal denegó, además, la *"Solicitud de Sentencia Parcial"* presentada por la parte aquí recurrida.

El 14 de agosto de 1997 los recurridos presentaron un escrito en oposición a la petición de *certiorari* que nos ocupa.

Evaluados los escritos de ambas partes, los voluminosos apéndices, a la luz de la fundamentada Resolución de Instancia y el derecho aplicable, se deniega el auto solicitado.

## I

Surge del recurso que los aquí recurridos presentaron una demanda en daños y perjuicios donde reclaman por los daños sufridos como consecuencia de una caída que sufrió la señora Mangual y su hija de tres (3) años de edad en las escaleras del edificio donde ubica la oficina del peticionario. Como consecuencia de la caída, se alega en la demanda, que la menor sufrió fracturas del fémur, clavícula, muñeca y en el cráneo. Luego de múltiples incidentes procesales -incluyendo la conferencia con antelación a juicio y descubrimiento de prueba- los allí demandados solicitaron que se desestimara la demanda y/o se dictara sentencia sumaria apoyados en dos (2) reclamos: (1) que no existe relación entre las alegadas acciones u omisiones de uno de los co-demandados, el doctor Scarano García, y los daños reclamados, y (2) que la acción de los demandantes mayores de edad está prescrita.

Los demandantes (aquí recurridos) se opusieron a lo solicitado mediante fundamentada moción. Solicitaron se dictara sentencia sumaria a su favor en cuanto al aspecto de la responsabilidad de la parte demandada. Esgrimidos los escritos, incluyendo la dúplica de los aquí peticionarios, el Tribunal denegó lo solicitado.

En su escrito ante nos los peticionarios reclaman, en síntesis, que el Foro recurrido incidió al determinar que en este caso existen aún varias controversias de hechos que ameritan ser dilucidadas en una vista evidenciaria y al determinar que la acción no está prescrita. No estamos de acuerdo.

## II

Como es sabido, la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, dispone que se dictará sentencia sumaria inmediatamente, si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. *Rodríguez v. Srio. de Hacienda,* **94 J.T.S. 20**, Opinión de 7 de marzo de 1994; *Toledo Maldonado v. Cartagena Ortiz,* **92 J.T.S. 173,** Opinión de 21 de diciembre de 1992; *Rivera Santana v. Superior Packaging Inc.,* **92 J.T.S. 165,** Opinión de 9 de diciembre de 1992; *Méndez Arocho v. El Vocero,* **92 J.T.S. 94,** Opinión de 30 de junio de 1992; *Corp. of the Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986). El propósito cardinal de esta regla es el de promover una solución justa, rápida y económica del litigio abreviando la disposición de pleitos que por no envolver una controversia genuina de hechos materiales hace innecesaria la celebración del juicio en su fondo. Usada con sabio discernimiento resulta ser un mecanismo valioso para descongestionar los calendarios judiciales. *Padín v. Rossi,* 100 D.P.R. 259, 263 (1971); *Roth v. Lugo,* 87 D.P.R. 386, 892 (1963); Cuevas Segarra, *Práctica Procesal Puertorriqueña,* **Publicaciones J.T.S.,** Vol. II, pág. 182; *Tello v. Eastern Airlines,* 119 D.P.R. 83, 86 (1987). La sentencia sumaria es un remedio extraordinario que sólo debe ser concedido cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a lo que reclama bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción. La sentencia sumaria sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *Corp. Presiding Bishop, supra; Aquellos Aseguradores de Lloyd's of London v. Cía. de Desarrollo Comercial de P.R.,* **90 J.T.S. 60,** Opinión de 30 de abril de 1990; *Rodríguez Meléndez v.*

*Supermercado Amigo,* **90 J.T.S. 50,** Opinión de 24 de abril de 1990.

Quien solicita la sentencia sumaria viene obligado a demostrar que no hay controversia genuina de hecho a ser juzgada y es deber del juzgador determinar si existe una controversia de hecho sustancial. *Valcourt Questell v. Tribunal,* 89 D.P.R. 827 (1964). Cuando existe duda en cuanto a la existencia de una controversia real, la misma debe resolverse en contra de la parte que la solicita. *Roth, supra; Valcourt Questell, supra.* En el presente caso el tribunal encontró que no existe controversia sobre la fecha, hora y lugar del accidente, la especialidad del médico, ubicación de su oficina, que el edificio no tiene ascensor, y los pacientes usan las escaleras.

Tampoco hay controversia de que la niña sufrió severos daños en la caída, ni del límite que cubre la póliza comercial del demandado.

En su fundamentada resolución, la ilustrada sala de instancia señaló a la página 3 lo siguiente:

*"La parte demandante ha alegado que existe responsabilidad de la parte demandada por su omisión de proveer unas facilidades de oficina adecuadas para el tipo de pacientes que allí se atienden. Tratándose de una acción al amparo del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. Sec. 5141, bajo este artículo y la jurisprudencia interpretativa del mismo, se ha resuelto que en reclamaciones por caídas, la parte demandante tiene que probar la existencia de una condición de peligrosidad que ocasionó la misma. La parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia, mediante la presentación de prueba respecto a la alegada negligencia. Cotto v. C.M. Ins. Co., 116 D.P.R. 644 (1985).*

*En el presente caso tenemos meras alegaciones de ambas partes. Como es sabido, meras alegaciones no hacen derecho. Flores v. Municipio de Caguas, 114 D.P.R. 521. Este tribunal determina que de las alegaciones en la demanda, así como de las mociones de sentencia sumaria y los documentos que obran en autos, surgen varias controversias de hechos que ameritan ser dilucidadas en una vista evidenciaria. Mencionamos, entre otras, la verdadera causa de la caída de la co-demandante Isabel Mangual y de su hija Carilys; la condición de la niña antes del accidente; posibilidad de que el co-demandado Dr. Scarano pudiese evitar el accidente."*

La documentación que acompaña el presente escrito no demuestra que el Foro recurrido se haya excedido en el ejercicio de su discreción al así resolver.

En su disenso la minoría enfatiza que no hay controversia en este caso, toda vez que no ve cómo podía el peticionario evitar el accidente y que, al denegar la sentencia sumaria solicitada, estamos enviando un mensaje a los tribunales de instancia y a los litigantes que descarten su uso. Sobre lo anterior bastaría con señalar que los casos se resuelven a base de las particulares circunstancias de los mismos. Consideradas las del que nos ocupa, debe recordarse que [e]l requisito de previsión *"no significa que debieron haberse previsto el peligro preciso o las consecuencias exactas que surgieron....Cuando se concluye que un hombre pudo de manera general haber previsto consecuencias de cierta clase, no le salva decir que no pudo prever el curso preciso o la total extensión de las consecuencias, de esa clase, que en realidad sucedieron." Hernández v. La Capital,* 81 D.P.R. 1031, a las páginas 1041-1042 (citas omitidas; puntos suspensivos en el original).

En lo que refiere al planteamiento de prescripción tampoco incidió el tribunal. La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor o por cualquier acto de reconocimiento del deudor. (Artículo 1873 del Código Civil, 31 L.P.R.A. Sec. 5303).

En este caso no está en controversia que el accidente ocurrió el 30 de diciembre de 1993.

La posición del peticionario es que la acción está prescrita toda vez que, a su juicio, la carta que envió el demandante al agente general de Seguros Triple S, no interrumpió el término prescriptivo. No tiene razón.

Surge del apéndice que acompaña el recurso (Exhibit E págs. 265-266) que el 27 de julio de 1994, es decir, siete (7) meses después del accidente, el licenciado Mariano Vidal Sáenz en representación de los allí demandantes, cursó una carta certificada con acuse de recibo a Enrique Vázquez Insurance Inc., agente general de la co-demandada Seguros Triple S en los siguientes términos:

*"Estimados señores:*

*Nuestra oficina representa al matrimonio compuesto por la Sra. Isabel Mangual Santiago y el Sr. Carlos Roberto Velázquez Brunet, así como a la menor Carilys Velázquez Mangual, hija bajo la patria potestad y custodia de aquéllos.*

*Se nos ha informado que vuestra compañía tenía suscrita allá para el 30 de diciembre de 1993 una póliza de seguro de responsabilidad pública sobre el Edificio San Gerardo, sito en la calle Concordia de Ponce, a nombre del Dr. Genaro Scarano. Sirva la presente para reclamar por los daños experimentados por nuestros clientes a raíz de los eventos que se relatan a continuación:*

*El jueves 30 de diciembre de 1993 la Sra. Isabel Mangual Santiago llevó a su hijita Carilys, de cuatro años para aquella fecha, a la oficina del referido galeno, a los fines de que realizara una evaluación neurológica. A las 10:45 a 11:00 am., la Sra. Mangual decidió salir un momento de la oficina, que ubica en el segundo piso del edificio en cuestión. Dado que la niña sufre de una condición que le impide caminar, su madre la tuvo que cargar en sus brazos al bajar las escaleras, por no contar el edificio con ascensor ni escaleras automáticas. Habiendo llegado al descanso de la escalera, cuando se disponía a bajar al próximo escalón, miró para asegurarse de afirmar seguro, mas sintió que el pie se le fue en blanco y acto seguido se fue de frente escaleras abajo. La niña rodó detrás de ella y en un momento determinado le pasó por encima a su madre.*

*La causa próxima del accidente radicó en la inadecuacidad de los escalones, al ser la pisada de éstos demasiado alta. De igual manera el Dr. Scarano debió haber previsto que alguien podría tener un accidente, bien fuera un paciente que intentara bajarlas solo, o acompañado por alguien.*

*Como consecuencia de la caída la Sra. Isabel Mangual Santiago experimentó múltiples traumas corporales, así como sufrimientos y angustias mentales, al igual que su esposo, por los daños físicos que sufriera Carilys a raíz del accidente. Carilys sufrió fracturas en ambos fémurs, en la clavícula, muñeca y cráneo con consiguiente formación de coágulos en el cerebro. La niña estuvo hospitalizada desde el 30 de diciembre de 1993 hasta el 12 de enero de 1994 en el Hospital Dr. Pila. Estuvo además enyesada de ambas piernas por aproximadamente dos meses. Al día de hoy Carilys continúa con problemas relacionados a dicha caída.*

*Los padres de la menor han experimentado daños y pérdidas económicas al tener que pedir dinero a préstamos con el objeto de sufragar el tratamiento médico relacionado con el accidente del 30 de diciembre de 1993.*

*Como representantes legales de la familia Velázquez Mangual, nos encontramos dispuestos a dialogar con el propósito de llegar a un acuerdo compensatorio que evitara la radicación de una demanda ante los tribunales.*

*Atentamente,*

*(fdo) Mariano Vidal Sáenz"*

El 2 de septiembre de 1997, el señor Carlos R. González, ajustador independiente de seguros, cursó una carta al licenciado Vidal Sáenz aludiendo a la dirigida por éste a Enrique Vázquez Insurance. Junto a la misma le envió un formulario de *"Autorización para Emitir Información Médica"* para ser devuelto con la información que se le especificaba (véase Exhibit E, página 268). Surge de la carta, que al pie de la misma el ajustador González indica que está enviando copia a Seguros Triple S. Se indica el número de reclamación de Triple S (SSS-94-0004). González le informó en la carta al licenciado Vidal que tan pronto se le envíen los formularios de autorización que remitió, *"nos volveremos a comunicar con usted para concertar una cita y discutir el caso en los méritos."*

Dicha carta fue contestada por el licenciado Vidal el 23 de septiembre de 1994. Acompañó con la misma las tres *"autorizaciones"* solicitadas por el ajustador.

Posteriormente, los aquí apelados presentaron el 13 de julio de 1995 la demanda objeto de este caso.

El reclamo de los peticionarios de que la acción está prescrita no encuentra apoyo. Los propios documentos sometidos por éstos así lo refutan.

La carta que envió el licenciado Mariano Vidal en representación de los aquí apelados constituyó un reclamo extrajudicial que interrumpió el plazo prescriptivo de un año que dispone el Artículo 1868 del Código Civil. En esa fecha comenzó un nuevo plazo prescriptivo que finalizaba el 27 de julio de 1995. Catorce días antes de vencido el mismo, el 13 de julio de 1995, se presentó en instancia la demanda. Forzoso resulta concluir que la desestimación solicitada es improcedente como cuestión de derecho.

### III

Con estos antecedentes se deniega el auto solicitado. La Resolución emitida por la Ilustrada Sala de Instancia es esencialmente correcta.

El juez Cordero disiente mediante voto separado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. CORDERO — 97 DTA 189

San Juan, Puerto Rico, a 10 de septiembre de 1997

Disiento de lo dicho por la mayoría. En este caso se debe dictar sentencia sumaria, ya que no existe controversia de cómo ocurrió el accidente; o sea, los hechos no están en disputa. Según el testimonio mediante deposición ofrecido por la propia perjudicada y co-demandante, Isabel Mangual Santiago, la caída por las escaleras no se atribuye a un defecto o condición peligrosa en las mismas y fue el resultado de la misma co-demandante poner su pie en falso porque tenía la vista obstruida al ésta tener ambas manos ocupadas con el cargador de su nena que en ese momento pesaba seis libras y media. Veamos su testimonio por vía de su deposición:

*"P. Okey. Le pregunto, ¿por qué razón usted se cayó?*

*R. Pues iba bajando la escalera, el cargador de la nena me estaba, este, bloqueando la vista y cuando yo saqué el cargador para mirar el escalón, pues ahí fue que me fui.*

*P. O sea, pero usted no resbaló.*

*R. No resbalé.*

*P. O sea, fue que usted puso el pie en falso porque no había escalón?*

*R. Eso creo.*

*P. Por tener la vista obstruida por el propio cargador de la niña.*

*R. El propio cargador de la nena.*

*P. Le pregunto si usted estaba haciendo uso del pasamano que hay allí.*

*R. No estaba haciendo uso del pasamano porque la nena en ese entonces me pesaba seis y media libras y yo tenía el cargador, o sea, yo estaba aguantando el cargador con las dos manos."*

(Depo. págs. 26-27; Apénd. págs. 153-154)

*"P. Okey. Cuando usted se va, descríbame en secuencia, qué es lo próximo que usted va notando o recuerda de su accidente.*

*R. Lo que yo recuerdo fue que cuando yo me fui, que iba de boca, este, yo apreté el cargador, apreté la nena. Entonces, este, yo me fui de boca y, este, le pasé a la nena por encima y empecé a dar vueltas por la escalera.*

\*\*\*\*\*\*\*\*

*P. ¿Ese día había claridad, estaba oscuro, había luz, faltaba....?*

*R. En ese momento yo vi las escaleras estaban claras."*

(Depo. págs. 29-30; Apénd. págs. 156-157).

*"P. O sea, que usted no es una persona que podamos decir que es una incapacitada físicamente.*

*R. No, señor.*

*P. De hecho, usted es maestra de personas que presentan condiciones de impedimentos físicos y de destrezas, ¿no?*

*R. Sí, señor."*

(Depo. pág. 31; Apéndice pág. 158).

*"P. Usted levantó a la niña. ¿La niña se encontraba, Carilis se encontraba dentro del cargador o fuera del cargador?*

*R. En ese momento ya estaba fuera del cargador.*

*P. O sea, que usted recogió la niña, la volvió a colocar en el cargador.*

*R. No, no la coloqué.*

*P. ¿La tomó en brazos?*

*R. La tomé en brazos."*

(Depo. pág. 35; Apéndice pág. 162).

*"P. Okey. Le pregunto, usted es maestra, a qué entonces atribuye usted la causa de la caída que usted sufrió.*

*R. Yo la atribuyo a que no había más ningún lugar accesible para yo subir o bajar la escalera.*

*P. O sea, que usted llegó allí, vio que esa era las facilidades que había, y como era la única decidió utilizarla.*

*R. (Sí con la cabeza )*

*P. Con la boca.*

*R. Sí, es correcto.*

*P. Es correcto. Y usted me está señalando, obviamente, que si hubiese habido un ascensor hubiese utilizado los servicios del elevador, ¿no?*

*R. Es correcto.*

*P. Físicamente las escaleras que habían eran adecuadas, ¿no?, para usted, para el uso suyo.*

*R. Yo no diría que adecuadas.*

*P. Okey. ¿A juicio suyo qué le faltaba a esas escaleras, si algo?*

*R. O sea, las escaleras estaban completas...*

*P. Unju...*

*R. ...pero...*

*P. ¿En materiales, se encontraba en buenas condiciones?*

*R. En materiales sí.*

*P. ¿Tenía pasamano por si usted necesitaba aguantarse?*

*R. (Sí, con la cabeza).*

*P. Con la boca.*

*R. Sí, señor.*

*P. ¿En iluminación, estaba claro?*

*R. Estaba claro.*

*P. ¿En pintura, estaba bien?*

*R. Bueno, en pintura no me recuerdo, porque verdaderamente en el mismo momento del accidente fue la primera vez que yo use las escaleras.*

*P. Okey. Pero que usted recuerde, en materiales y en la escalera, en la estructura, no había ni construcción ni defecto ni faltaban losetas ni estaba claro, como usted me ha indicado, eso es así.*

*R. Sí señor."*

(Depo. pág. 38; Apéndice págs. 165-167).

En su resolución, págs. 2-3, el propio foro recurrido resolvió:

*"Este tribunal encuentra que no existe controversia en cuanto a la fecha, hora y lugar del accidente. Tampoco existe controversia en cuanto a que el Dr. Scarano es un especialista en Neurología Pediátrica, aunque también atiende pacientes adultos. Este es arrendatario en el Edificio San Gerardo y su oficina está ubicada en un segundo piso. Los pacientes que van a su consultorio usan las escaleras, ya que el edificio no tiene ascensor. Las escaleras tienen pasamanos y están en*

*buenas condiciones.*

******

*Veamos los dos planteamientos esgrimidos por la parte demandada en apoyo de su solicitud de sentencia sumaria.*

### A- Niega relación causal entre acción u omisión y los daños que se reclaman.

*La parte demandante ha alegado que existe responsabilidad de la parte demandada por su omisión de proveer unas facilidades de oficina adecuadas para el tipo de pacientes que allí se atienden. Tratándose de una acción al amparo del Art. 1802 del Código Civil de Puerto Rico, 31 L.PRA Sec. 5141, bajo este artículo y la jurisprudencia interpretativa del mismo, se ha resuelto que en reclamaciones por caídas, la parte demandante tiene que probar la existencia de una condición de peligrosidad que ocasionó la misma. La parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia, mediante la presentación de prueba respecto a la alegada negligencia. Cotto v. C.M. Ins. Co., 116 DPR 644 (1985).*

*En el presente caso tenemos meras alegaciones de ambas partes. Como es sabido, meras alegaciones no hacen derecho. Flores v. Municipio de Caguas, 114 DPR 521. Este tribunal determina que de las alegaciones en la demanda, así como de las mociones de sentencia sumaria y los documentos que obran en autos, surgen varias controversias de hechos que ameritan ser dilucidadas en una vista evidenciaria. Mencionamos, entre otras, la verdadera causa de la caída de la co-demandante Isabel Mangual y de su hija Carilys; la condición de la niña antes del accidente, posibilidad de que el co-demandado Dr. Scarano pudiese evitar el accidente."* (Resolución págs. 2-3; Apéndice págs. 2-3)

Como se puede apreciar, el foro *a quo* denegó la sentencia sumaria porque en su opinión hacía falta una vista evidenciaria para dilucidar:

(1) la verdadera causa del accidente;

(2) la condición de la niña antes del accidente; y

(3) la posibilidad del co-demandado Dr. Scarano de poder evitar el accidente.

No hace falta una vista evidenciaria cuando la propia demandante, quien es la única persona que sabe como ocurrió el accidente, testifica que puso el pie en falso y se cayó. Según reconoció el foro de instancia y la propia demandante, no existe controversia de que la escalera estaba bien iluminada, no tenía defectos, tenía un pasamano y el Dr. Scarano era un arrendatario. Tampoco veo la necesidad de una vista para determinar la condición, antes del accidente, de una niña de seis libras y media que está siendo cargada por su madre en un cargador al momento de ésta caer ¿Qué tiene que ver la condición de la niña con la forma en que ocurrió el accidente? Tampoco vemos qué pudo haber hecho el Dr. Scarano antes del accidente para evitar que la demandante pisara en falso.

A mi juicio, es un error reversible denegar una sentencia sumaria cuando la propia demandante alega en su testimonio que ella atribuye el accidente exclusivamente a la inexistencia de un ascensor en un edificio de dos (2) pisos. La inexistencia de un ascensor en este caso no puede considerarse como un acto negligente. El argumento de los demandantes es legalmente insostenible e inaplicable para detener una sentencia sumaria.

La posición de los demandantes, en síntesis, es que como el Dr. Scarano atiende pacientes lisiados, debería tener su oficina en un edificio que tenga facilidades de ascensor. Este argumento carece de todo mérito, especialmente en este caso, puesto que la demandante no es una persona que estaba, al momento del accidente, físicamente impedida. Próximo, no se nos ha señalado caso o ley alguna donde se le impone la obligación a los médicos a tener rampas o ascensores en edificios construidos **antes** de la aplicabilidad de la ley federal, Americans with Disabilities Act, 42 USC sec. 12181 *et seq.*

600

En todo evento, dicho estatuto es inaplicable al caso ante nos por no tratarse de personas impedidas al momento del accidente, y por no ser el Dr. Scarano dueño del edificio donde ocurrió el accidente.

## II

La responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Según el referido artículo, todo perjuicio material o moral da lugar a reparación si concurren tres requisitos o elementos: primero, deberá establecerse la realidad del daño sufrido; segundo, la existencia de un nexo causal entre el daño y la acción u omisión del demandado; y tercero, deberá establecerse que dicho acto u omisión fue culposo o negligente. *Vélez Rodríguez v. Amaro Cora,* ___ D.P.R. ___ (1995), **95 J.T.S. 28,** págs. 754, 756; *J.A.D.M. v. Centro Comercial Plaza Carolina,* ___ D.P.R. ___ (1993), **93 J.T.S. 26,** págs. 10432, 10437; *Elba A.B.M. v. U.P.R,* 125 D.P.R. 294, 308 (1990); *Hernández v. Fournier,* 80 D.P.R. 93, 96-97 (1957).

El estándar de conducta para determinar si un acto u omisión es culposo o negligente es el del *"buen padre de familia", y el "hombre prudente y razonable".* Estas figuras sirven como paradigma de la responsabilidad extracontractual en nuestro ordenamiento jurídico, y se les atribuye la capacidad de comportarse siempre con un debido cuidado consistente en anticipar y prever las consecuencias racionales de sus actos y omisiones. *Miranda v. E.L.A.,* ___ D.P.R ___ (1994), **94 J.T.S. 152,** pág. 519, 523; *Ocasio Juarbe v. Eastern Air Lines, Inc.,* 125 D.P.R. 410, 418; *Hernández v. La Capital,* 81 D.P.R. 1031, 1038 (1960); *Ramos v. Carlo,* 85 D.P.R 353, 358 (1962).

El factor de la previsibilidad es de gran importancia en los casos de daños y perjuicios, ya que el Artículo 1802 gira inevitablemente en torno a la función de previsión del individuo, como factor determinante de su responsabilidad. *Vélez Rodríguez v. Amaro Cora, supra*; *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 18 (1987). Sin embargo, esto no quiere decir que una persona esté obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación. *Pacheco v. A.F.F.,* 112 D.P.R. 296, 300 (1982). El deber de previsión no se extiende a todo posible peligro concebible que pueda amenazar la seguridad de los demas; sino a aquellos que una persona prudente y razonable debería anticipar por su probabilidad en las circunstancias de un caso. *Hernández v. La Capital,* 81 D.P.R. 1031, 1038 (1960).

Debemos añadir, que en materia de relación causal rige la teoría de la causalidad adecuada y conforme a la misma no es causa toda condición sin la cual no se hubiera producido el daño, sino aquélla que ordinariamente lo produce, según la experiencia general. *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 D.P.R. 702, 710 (1990).

Como bien dijo el Tribunal Supremo de Puerto Rico en *Cotto v. C.M. Ins. Co.,* 116 D.P.R. 644, 650-651 (1985):

*"No hay duda de que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinan el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro. A esos efectos, véanse Gutiérrez v. Bahr, 78 D.P.R. 473 (1955); Goose v. Hilton Hotels, 79 D.P.R. 523 (1956); Santaella Negrón v. Licari, 83 D.P.R. 887 (1961); Weber v. Mejías, 85 D.P.R. 76 (1962), y Aponte Betancourt v. Meléndez, 87 D.P.R. 652 (1963). Deberá observarse, sin embargo, que --como expresáramos en Goose v. Hilton Hotels, supra, págs. 527-528-- el dueño del establecimiento no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección y que el visitante tiene que probar que el dueño del establecimiento no ha ejercido el cuidado debido para que el local sea seguro para él. En los casos antes citados impusimos responsabilidad por cuanto los mismos envolvían condiciones peligrosas existentes dentro de los establecimientos correspondientes, las cuales eran* **de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos.**

*Sabido es que, como regla general, le corresponde a la parte actora en un caso de daños y perjuicios donde alegue haber sufrido daños como consecuencia de la negligencia de la parte*

*demandada el peso de la prueba respecto a dicha alegada negligencia. Vaquería Garrochales, Inc. v. A.P.P.R., 106 D.P.R. 799 (1978); Irizarry v. A.F.F., 93 D.P.R. 416 (1966); Morales Mejías v. Met. Pack. & Ware. Co., 86 D.P.R. 3 (1962). En palabras más sencillas, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos.*

*Un análisis de nuestra jurisprudencia referente a la situación específica de reclamaciones por caídas revela que hemos exigido de la parte demandante que pruebe, como parte esencial de la causa de acción que ejercita, la existencia de la condición de peligrosidad que ocasionó la caída."* (Enfasis en el original.)

En el caso ante nos, la parte demandante no ha probado *"la existencia de una condición de peligrosidad que ocasione la caída."* Dicho en otra forma, la parte demandante no controvirtió los hechos, sino que se limitó a formular una oposición mediante argumentos y aseveraciones generales. Tal oposición es inadecuada para refutar una moción de sentencia sumaria bien apoyada mediante deposiciones y declaraciones juradas que demostrasen que no hay controversia real **sustancial** en cuanto a ningún hecho material. Regla 36.3, Reglas de Procedimiento Civil de 1979, 32 L.P.R.A Ap. III, R. 36.3.

El mecanismo procesal de sentencia sumaria es un remedio discrecional que debe invocarse cuando la prueba documental que se presenta establece con claridad la existencia de un derecho, y debe dictarse en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes; *PFZ Properties v. General Acc. Ins.,* \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 116,** pág. 124; *Medina Morales v. Merck, Sharp & Dhome,* \_\_\_ D.P.R \_\_\_ (1994), **94 J.T.S. 52,** pág. 11786; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720-721 (1986); y establece una vía procesal que autoriza un remedio rápido, eficaz y sumario en aquellos casos en que no existe una controversia sobre hechos materiales que requiera la celebración de un juicio. *Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras,* \_\_\_D.P.R. \_\_\_ (1993), **93 J.T.S. 127**, pág. 11079; *Corp. Presiding Bishop CJC of LDS, supra,* pág. 720.

En el caso ante nos, no hay hechos en controversia, sólo falta aplicar el derecho. Procede la sentencia sumaria. Sin embargo, el mensaje que la mayoría envía con su opinión equivale a casi decirle a los Tribunales de Primera Instancia y a los litigantes que descarten el uso tan valioso de la Regla 36.3.

## III
Como lo antes dispone del caso, se hace innecesario, en mi opinión, discutir el término prescriptivo. Disiento.

**CHARLES A. CORDERO**
**Juez de Apelaciones**